IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DANIEL RAY BROWN                                                                    PLAINTIFF

            v.                    Civil No. 6:09-cv-06034

LARRY NORRIS, Director,
Arkansas Department of Correction;
MS. BROWN, Unit Supervision,
Omega Technical Violation Center (TVC);
JANNA LOCK, Medical Administrator,
Omega TVC; MR. SAUNDERS, Parole
Revocation Hearing Examiner; and
MIKE PIPPIN, Area 3 Manager,
Department of Community Correction                                                  DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

     Plaintiff, Daniel Ray Brown (hereinafter Brown), an inmate of the Arkansas Department of Community Correction confined at the Omega Technical Violator Center located in Malvern, Arkansas, filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis.*

     Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Robert D. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation. Currently before me is a motion to dismiss (Doc. 12) filed on behalf of Larry Norris, Kathy Brown, Mike Pippin and Ernest Sanders, Jr.[1] Brown has not responded to the motion to dismiss.

**Background**

     According to the allegations of the complaint (Doc. 1), Brown was denied the appointment of counsel at his parole hearing. He asserts his request for appointed counsel was denied by Parole

---

[1] According to the docket sheet, an attempt to serve Janna Lock was made on August 10, 2009 (Doc. 9). However, the Court has now been advised she is employed by Correctional Medical Services and not the Arkansas Department or Community Correction or the Arkansas Department of Correction. The Court will re-direct service on her.

Officer Mike Pippin and not the Parole Hearing Officer Ernst Sanders, Jr.  Brown maintains his parole revocation hearing was unfair due to the fact that he did not have ample time to procure an attorney.  He asserts that the Parole Board has not responded to his appeal.  He asks that the hearing results be reversed and he be immediately released from custody.

Brown also contends he has been denied medical care.  In this regard, he contends:  (1) he is forced to pay a $3.00 co-pay; (2) he was given a physical by a Nurse Practitioner, Ms. Keullman, who refused to refer him to a doctor for his back injury; (3) Correctional Medical Services (CMS) Administrator Janna Lock has refused to request his medical records from the Arkansas Department of Correction (ADC); (4) he has been refused a lower bunk despite the fact that climbing to the top bunk hurts his back; and (5) he has been in pain unnecessarily since his arrival on March 4, 2009.  He asks that the Court order him to be given a lower rack until seen by a doctor, order Defendants to provide him proper medical care, and halt immediately the assessment of the $3.00 co-pay.

Brown further alleges that he has been threatened on two occasions for complaining about being in pain.  He asserts that two unnamed staff members told him he could go to the "hole," take the pain, or pay the $3.00 co-pay to CMS.

Brown also contends the indigent supplies furnished to inmates are insufficient.  He does not allege how the supplies are insufficient.  He simply maintains inmates in the Omega Technical Violator Center should be provided with the same indigent supplies as Arkansas Department of Correction inmates.

Finally, Brown contends that grievances he has filed have not been responded to or processed properly.  He asserts Defendants have tried to avoid the real issues by not answering grievances.

### Defendants' Arguments

As noted above, Defendants have now moved to dismiss this case pursuant to Rule 12(b)(6). First, Defendants argue that Separate Defendant Ernest Sanders, Jr., is absolutely immune from claims stemming from his role as a parole revocation hearing examiner.  Second, Defendants

maintain Separate Defendants Mike Pippin is also entitled to absolute immunity from a civil lawsuit stemming from his functions as a parole officer. Third, with respect to any claims regarding the outcome of the parole revocation hearing, Defendants maintain the lawsuit is barred by the doctrine of *Heck v. Humphrey*. Fourth, Defendants maintain they are entitled to sovereign immunity, pursuant to the Eleventh Amendment, for all claims for monetary damages. Fifth, Defendants maintain Separate Defendant Larry Norris is subject to dismissal because all potential claims against him would be based on *respondeat superior* liability. Alternatively, if the complaint is read to be asserting individual capacity claims against any of the Defendants, they contend they are entitled to qualified immunity.

## **Applicable Standard**

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(quoting *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (*quoting Iqbal*, 129 S. Ct. at 1949. The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007), or reasonable inference, that the "defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. *See Twombly*, 127 S. Ct. at 1965 ("And, of

course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.")(quotation marks and citation omitted). *See also Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004)(While pro se complaints are liberally construed, they must allege sufficient facts to support the claims.).

"Several principles guide us in determining whether a complaint meets [the plausibility] standard. First, the court must take the plaintiff's factual allegations as true. This tenet does not apply, however, to legal conclusions or formulaic recitation of the elements of a cause of action; such allegations may properly be set aside." *Braden*, 588 F.3d at 594 (citation omitted). Additionally, "some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim." *Braden*, 588 F.3d at 594 (quotation marks and citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citation omitted). In determining whether the well-pleaded, non-conclusory, factual allegations would give rise to a plausible claim, the "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. The "evaluation of a complaint upon a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (*quoting Iqbal*, 129 S. Ct. at 1950).

## Discussion

Keeping these principles in mind, we turn to an examination of the claims asserted by Plaintiff. First, Plaintiff's claims against Ernest Sanders, a hearing officer with the Arkansas Post

Prison Transfer Board, are subject to dismissal. The Arkansas Post Prison Transfer Board is a state agency created by the Arkansas General Assembly. *See* Ark. Code Ann. § 16-93-201 (Supp. 2001). Its members are appointed by the governor and confirmed by the senate. *Id.* A claim against a hearing officer of the Arkansas Post Prison Transfer Board is the equivalent of a suit against a state agency and Eleventh Amendment immunity precludes this claim. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Furthermore, the hearing examiner performs essentially judicial functions and is entitled to absolute immunity. *See e.g., Anton v. Getty*, 78 F.3d 393 (8th Cir. 1996).

Second, Plaintiff's claims against Mike Pippin, his parole officer, are subject to dismissal. Parole officers are absolutely immune from suits challenging conduct intimately associated with the criminal judicial process. *See Copus v. City of Edgerton,* 151 F.3d 646, 649 (7th Cir. 1998) (probation officers); *Demoran v. Witt,* 781 F.2d 155, 157 (9th Cir. 1985) (parole officers are entitled to absolute immunity with respect to the preparation of parole revocation reports); *Evans v. Dillahunty,* 711 F.2d 828, 831 (8th Cir. 1983)("parole officials in deciding to grant, deny, or revoke parole, perform functions comparable to those of judges," and are, therefore, entitled to absolute immunity.).

Third, to the extent Plaintiff seeks to challenge the revocation of his parole and subsequent incarceration, the claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In *Heck*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a

state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." *Heck*, 512 U.S. 486-87. The holding of *Heck* has been applied to claims that would, if successful, imply the invalidity of a parole or probation revocation. *See e.g., Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995). Clearly, the holding of *Heck* bars Plaintiff's claims in this case asking that the parole revocation be reversed and he be immediately released from incarceration.

Fourth, Separate Defendants Larry Norris and Kathy Brown contend Plaintiff's claims for monetary damages are barred by the doctrine of sovereign immunity under the Eleventh Amendment. I agree. Plaintiff's claims for monetary damages against Larry Norris and Kathy Brown, in their official capacity with the Arkansas Department of Correction (ADC) or the Arkansas Department of Community Correction, are subject to dismissal. The Eleventh Amendment prohibits § 1983 suits seeking monetary damages from individual state officers in their official capacities. *See Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996). The civil rights damages claims against these officials are barred either by sovereign immunity or because in their official capacities the individuals are not considered to be persons for purposes of the civil rights statutes. *See Murphy v. State of Arkansas*, 127 F.3d 750 (8th Cir. 1997). Plaintiff's claims against Separate Defendants Larry Norris and Kathy Brown for monetary damages should be dismissed.

However, the Eleventh Amendment does not bar official-capacity claims for injunctive relief against state officials. *See Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908). "The doctrine of *Ex Parte Young* is based on the idea that the power of federal courts to enjoin continuing violations of federal law is necessary to vindicate the federal interest in assuring the supremacy of

that law." *In re SDDS, Inc.,* 97 F.3d 1030, 1035 (8th Cir. 1996). *See also Fond du Lac Band of Chippewa Indians v. Carlson*, 68 F.3d 253 (8th Cir. 1995).

Fifth, Plaintiff's claim of a constitutional violation because he was charged a $3.00 co-pay for medical services has no basis. While the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost. *See e.g., Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997)(deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so. *See Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999). *See also Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981)(no basis for due process claim where deductions from prisoner accounts were assessments for value received). Brown has not alleged that he was unable to obtain necessary medical care because of the requirement that he bear the cost, or some portion of the cost, of the care. This claim should be dismissed.

Sixth, no constitutional claim is stated against the unnamed staff members who allegedly verbally threatened Plaintiff by stating he could go to the "hole," take the pain, or pay the $3.00 co-pay. "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation); *Martin*, 780 F.2d at 1338-1339 (being

called an obscene name and threatened with adverse consequences unless he cut his hair and shaved does not state a claim of constitutional dimension); *Black Spotted Horse v. Else*, 767 F.2d 516, 517 (8th Cir. 1985)(use of racially offensive language in dealing with a prisoner does not, by itself, state a claim). *Cf. Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986)(A claim was stated where the prisoner alleged "that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death.").

Seventh, Brown contends his grievances were not handled properly. However, he has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures. He makes no argument that he was treated differently from other similarly situated prisoners, or that his grievances were ignored because of his exercise of his First Amendment rights, or that his ability to exercise any specific constitutional right was chilled by Defendants' actions.

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted). *See also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (*citing Flick v. Alba*, 932

F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Blagman*, 112 F. Supp. 2d at 542 (*citing, Scott v. Kelly*, 107 F. Supp. 2d 706 (E.D. Va. 2000), *aff'd*, 6 Fed. Appx. 187 (4th Cir. 2001)). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

Eighth, the general allegations that indigent supplies are insufficient and inmates of the Omega Technical Violators Center should be provided with the same supplies as ADC inmates, does not state a claim of constitutional dimension. While inmates have a constitutional right to personal hygiene items such as toothbrushes and soap, there is no guarantee that inmates in units run by different governmental agencies will receive the same supplies. *See e.g., Keenan v. Hall*, 83 f.3d 1083, 1091 (9th Cir. 1996)("Indigent inmates have the right to personal hygiene supplies."). Brown has not alleged that he was deprived of indigent supplies or that he was somehow made to chose between having indigent hygiene supplies and other supplies such as postage and writing paper for legal correspondence. *See e.g., Gluth v. Kansas*, 951 F.2d 1504 (9th Cir. 1991)(inmates had to purchase hygiene materials to avoid punishment, that the requisite hygiene supplies and supplies required for court access cost at least $46, and that inmates who had more than $12 in their trust accounts did not qualify for indigent status).

Ninth, no claim is stated against Larry Norris, the former Director of the Arkansas Department of Correction. Brown is being held in a center run by the Arkansas Department of Community Correction. The Arkansas Department of Community Correction is a state agency with its own director, G. David Guntharp.

Finally, the Plaintiff has asserted no claims against Kathy Brown. The only time her name is mentioned is in the caption of the case and on page two where she is listed as one of the Defendants.

### Conclusion

Accordingly, I recommend that the motion to dismiss (Doc. 12) be granted. This would dismiss all claims against Larry Norris, Kathy Brown, Ernest Sanders, Jr., and Mike Pippin.

This leaves for later resolution Brown's claim that he is being denied adequate medical care. Janna Lock has now been identified as an employee of Correctional Medical Services. By separate order, service will be re-directed on her.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **6th day of April 2010.**

        /s/ Barry A. Bryant
        HON. BARRY A. BRYANT
        UNITED STATES MAGISTRATE JUDGE